UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TAMMY L. BONNER                                                                          PLAINTIFF

VERSUS                                                         CIVIL ACTION NO. 1:21-CV-341-HSO-RPM

COMMISSIONER OF SOCIAL
SECURITY                                                                                DEFENDANT

## REPORT AND RECOMMENDATION

Before the Court is Tammy L. Bonner's complaint appealing from the Commissioner of Social Security's decision denying her claim for disability benefits under the Social Security Act. Bonner alleges a period of disability beginning April 25, 2017, based on impairments of cerebral venous sinus thrombosis; blood clot in lower left lung; deep vein thrombosis (DVT); three subdural hematomas; degenerative disc disease; damaged nerve (left leg); migraines and chronic pain; transient ischemic attacks (TIA); inability to sleep, weak, and tired; and grief, anger, shock, and fear of death. Doc. [8] at 124-25; 257-58, 278. The claim was denied initially and on reconsideration. *Id.* at 116-152. Bonner was 57 years old at the alleged onset date of disability. *Id.* at 124. She completed three years of college, with past relevant work as a government services supervisor and collection clerk. *Id.* at 31, 279.

Plaintiff requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 58-110. On May 29, 2019, the ALJ issued a decision denying benefits. *Id.* at 163-77. The Appeals Council granted review and remanded the matter back to the ALJ. *Id.* at 184-86. On remand, the ALJ conducted a second hearing and issued another decision denying benefits. *Id.* at 16-32; 111-21.

In her decision, the ALJ found that Bonner had not engaged in substantial gainful activity since the alleged onset date of April 25, 2017. *Id.* at 18-19. The ALJ found that Bonner had severe impairments of degenerative disc disease of the cervical spine and dorsalgia. *Id.* at 19. The ALJ also considered whether Bonner had severe impairments from enlarged thyroid, obesity, migraine/headaches, DVT, history of cerebral venous sinus thrombosis with subdural hematoma, double vision, and depression; but found that none of these conditions rose to the level of a severe impairment. *Id.* at 19-24. Additionally, the ALJ concluded that Bonner's impairment or combination of impairments did not meet any of the Listings found in the Social Security regulations. *Id.* at 24-25.

Based on her impairments, the ALJ determined that Bonner maintained the residual functional capacity (RFC) to perform sedentary work, but with the following exceptions: she can stand/walk 2 hours in an 8-hour work day; sit up to 6 hours in an 8-hour work day with a sit-stand option alternating every 30 minutes between sitting and standing; lift, carry, push, or pull ten pounds occasionally and less than 10 pounds frequently; never climb ladders, ropes, or scaffolds; never crawl; occasionally stoop, kneel, crouch, and climb ladders,[1] ramps, and stairs; and must avoid all exposure to hazardous machinery and unprotected heights. *Id.* at 25. Relying on the testimony of a vocational expert, the ALJ concluded that Bonner is capable of performing her past relevant work as a collection clerk; therefore, she is not disabled as defined by the Act. *Id.* at 31-32; 107-08. The Appeals Council denied Bonner's motion for review. *Id.* at 7-10. Bonner then filed the instant complaint in federal court.

---

[1] Although not identified as a point of error by Bonner, the undersigned notes that the ALJ inconsistently found that Bonner can both "never" climb ladders and "occasionally" climb ladders. Doc. [8] at 25. There is no suggestion that Bonner's past relevant work as a collection clerk would require her to climb ladders.

In her brief in support of remand, Bonner argues that (1) the ALJ's RFC determination was not supported by substantial evidence; and (2) the ALJ erred in failing to find that she suffered from severe impairments based on her history of DVT, history of cerebral venous sinus thrombosis with subdural hematoma, migraines, and history of TIAs.  Doc. [13].

<b><u>Law and Analysis</u></b>

**<u>Standard of Review</u>**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g).  This standard requires supporting evidence that is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision."  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'"  *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).  While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are

within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

**Residual Functional Capacity**

In her first assignment of error, Bonner argues that the ALJ's RFC determination was not supported by substantial evidence. Doc. [13] 5-8. For the most part, Bonner simply argues the weight of the evidence and points to favorable medical opinions, in particular the opinion of Dr. Shyam Daya. She criticizes the ALJ for not discussing the "myriad of comorbidities that

factored into Dr. Daya's opinion." *Id.* at 7. She also asserts that the ALJ made no accommodation for Plaintiff's use of a cane. *Ibid.* Finally, Bonner argues that the opinions of Dr. Mark Mulder, Dr. Lee Irvin, and Dr. Daya are consistent with each other and with the totality of Plaintiff's treatment history. *Ibid.*

Bonner filed her application for disability benefits on August 10, 2017. For any application filed "on or after March 27, 2017," 20 C.F.R. § 404.1520c applies. Under these more recent social security regulations, an ALJ is required to "explain" his or her persuasiveness finding insofar as "consistency" and "supportability" are concerned. 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c. Pursuant to 20 C.F.R. § 404.1520c, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)". In other words, ALJs are no longer required to give controlling weight to the opinions of treating physicians. However, before an ALJ may discount or reject an opinion, he or she must "articulate in [the] determination or decision how persuasive [the ALJ] find[s] all of the medical opinions ... in [the claimant's] case record." 20 § 404.1520c(b); *see Moore v. Saul*, No. 3:20-CV-48-DPJ-MTP, 2021 WL 754833, at *3 (S.D.Miss. Feb. 26, 2021). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. 404.1520c(b)(2).

Whether the ALJ properly evaluated medical opinions and whether substantial evidence supports an RFC determination are legally distinct issues. Under the social security regulations, an ALJ is required to "explain" his persuasiveness finding insofar as "consistency" and

"supportability" are concerned. 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c.  If the Court cannot determine the ALJ's reasons for finding a given medical opinion to be persuasive in the first instance, the Court cannot determine whether that finding is supported by substantial evidence. *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D.Tenn. July 20, 2021).  In short, the question of whether an ALJ provided an adequate discussion to allow for meaningful judicial review is a threshold question that is addressed before reaching the issue of substantial evidence. *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6–*7 (S.D.Miss. Sept. 15, 2021).

The ALJ found the opinions of Drs. Daya, Mulder, and Irvin to be unpersuasive.  Doc. [8] at 28-30.  Although Bonner appears to challenge the ALJ's persuasiveness analysis, she does not identify any specific shortcoming with respect to the ALJ's discussion of Dr. Mulder and Dr. Irvin.  Instead, Bonner focuses her argument almost exclusively on the ALJ's assessment of Dr. Daya's opinion.

The undersigned's first inquiry is whether the ALJ conducted an adequate persuasiveness analysis with respect to each of the medical providers.  Dr. Daya concluded that Bonner had limitations far greater than those assigned by the ALJ.  Doc. [10] at 611, 614.  For instance, Dr. Daya opined that Bonner was limited to sitting one-hour total in an eight-hour day, and that she was incapable of working 40 hours a week. *Id.* at 613-14.  However, the ALJ found Dr. Daya's opinion unpersuasive for a variety of reasons.  Doc. [8] at 29-30.  Generally, the ALJ found that Dr. Daya's opinions were not consistent with Dr. Daya's own progress notes.  For example, at Dr. Daya's first examination of Bonner on November 19, 2018, examination, Dr. Daya reported that Bonner was doing "okay" on Gabapentin and had no recent seizures on Lamictal.  Doc. [11] at 26.  Bonner's cervical and lumbar MRIs revealed only mild disc bulges.  Given the mild

6

nature of Bonner's degenerative disc disease, Dr. Daya indicated that epidural steroid injections would not be used for treatment and a neurosurgery referral would be premature. Dr. Daya noted that Bonner's strength in her upper extremities was normal, and balance was normal with cane. *Id.* at 29. Her gait and stance were normal as well. In the assessment/plan section, Dr. Daya concluded that he conducted a medical examination "without abnormal findings" and that Bonner was "Released w/o Limitations." *Ibid.* At a subsequent examination on April 3, 2018, Dr. Daya reported that Bonner's mobility was not limited, and her balance was normal. Doc. [12] at 73. Bonner's gait and stance with cane were normal as well. Based on the foregoing, the undersigned finds that the ALJ provided an adequate explanation for why she found Dr. Daya's opinion to be unpersuasive.

With respect to Dr. Irvin, the ALJ found his opinion to be unpersuasive because medical evidence indicates that the claimant's DVTs that were present in 2017 had improved; and there have been no objective signs or symptoms that her physical capacity is limited based on a venous Doppler ultrasound done in January 2019. Doc. [8] at 29; Doc. [10] at 608. The latter test was negative for DVT. Doc. [10] at 658-59. As to Dr. Mulder[2], the ALJ found his opinion to be unpersuasive because it was written shortly after Bonner was treated for a cerebral hematoma; and there were no treatment records from the provider since July 2017. Doc. [8] at 28; Doc. [9] at 260-63. Dr. Mulder's opinion regarding Bonner's limitation is dated July 28, 2017. Doc. [9] at 260-63. In her brief, Bonner asserts that Dr. Mulder treated her "on multiple occasions throughout 2017 and 2018." (Doc. [13] at 3); the specific records cited by Bonner date from June and July of 2017. *See* Doc. [9] at 507, 526, 572, 582, 587. Other treatment records from Dr. Mulder do date from 2018. *See e.g.* Doc. [10] at 465, 473. However, Bonner does not cite to

---

[2] Dr. Mulder is misidentified as "Mark Mal, M.D." in the ALJ's decision. *See* Doc. [9] 260-61; Doc. [13] at 2-3; Doc. [14] at 6-7 & n.3.

7

any of these records specifically; nor does she explain how these later treatment records demonstrate greater limitations associated with her conditions. The undersigned has reviewed these 2018 treatment records. Notably, in each instance, Dr. Mulder released Bonner "w/o Limitations." *Id.* at 468, 475. The ALJ also noted that Dr. Mulder concluded that Bonner's loss of mental capacity "may or may not be permanent." In fact, subsequent records, such as those of Dr. Stoudenmire, indicated that Bonner's cognitive functioning was at least in the average range; and that she had normal memory, concentration, and attention. Based on the foregoing, the undersigned concludes that the ALJ conducted an adequate persuasiveness analysis regarding Dr. Irvin and Dr. Mulder.

In addition to the ALJ's persuasiveness analysis, other substantial medical evidence in the record supports the ALJ's RFC determination. Specifically, the ALJ relied on the opinion of a state agency physician, who assigned limitations to Bonner that closely track the ALJ's RFC determination. Doc. [8] at 28, 130-32. Moreover, the state agency's opinion was affirmed by a second state agency physician. *Id.* at 28, 140. The state agency physicians considered Bonner's use of cane in their RFC evaluations. *Id.* at 129, 132.

The ALJ also relied on the opinion of a state agency psychologist who concluded that Bonner's adjustment disorder was non-severe because it caused no more than mild limitations in the claimant's mental functioning. *Id.* at 29, 153. The ALJ further observed that the psychologist's opinion was consistent with the opinion of examining psychologist, Dr. Stoudenmire. *Id.* at 29; Doc. [10] at 288-290. Dr. Stoudenmire in turn opined that Bonner's problems were primarily physical and that her mild depression and anxiety were controlled without medication or psychiatric treatment. Dr. Stoudenmire also concluded that from a psychological point of view, there was no reason Bonner would have difficulty performing

routine repetitive tasks.  The ALJ found these medical opinions persuasive, which in turn, provide substantial evidence in support of the ALJ's RFC determination.

In addition to medical opinion evidence, the ALJ relied on Bonner's own statements about her level of activity.  Doc. [8] at 27-28.  For example, Bonner enjoyed going to Mardi Gras celebrations, going on dates with her husband, and seeing her four grandchildren.  She was able to do light household chores such as housecleaning, cooking, washing dishes, and doing laundry at her own pace.  She had no difficulties with personal grooming and hygiene activities.  She attended church about two times per week when feeling up to it.  She shopped, but only if accompanied by someone.  On November 18, 2019, she reported that she engaged in 150 minutes of moderate exercise per week and muscle strengthening activities two or more days per week.  Doc. [11] at 368.  The ALJ also noted that, although it did not rise to the level of substantial gainful activity, Bonner had worked since the alleged onset date.  Ultimately, the ALJ concluded that Bonner's self-reported activities demonstrated that she was able to engage in a wide range of daily and other activities not consistent with her allegations of disabling symptoms.  Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's RFC finding that Bonner can perform sedentary work with additional limitations.

**Other Severe Impairments**

Bonner argues that the ALJ erred in failing to find that she suffered from severe impairments based on her history of DVT, history of cerebral venous sinus thrombosis with subdural hematoma, migraines, and history of TIAs.  Doc. [13] at 8-9.  Bonner argues generally that these conditions cause more than a slight restriction on her ability to work; however, in her very brief treatment of this issue, she fails to point to any medical opinion specifically linking one of these conditions to a functional limitation not already accounted for in the RFC.

At Step 2 of the five-step analysis, the ALJ found that Bonner suffered from severe impairments of degenerative disc disease of the cervical spine and dorsalgia. Thus, Bonner prevailed at Step 2 of the five-step evaluation process; and the process continued to the later steps of the analysis. Any error in not finding other conditions to be severe impairments would be harmless. *See Herrera v. Comm'r,* 406 Fed. Appx. 899, 903 (5th Cir. 2010) (per curiam) (holding that the ALJ's failure to assess the severity of a claimant's impairments at step two is not a basis for remand where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, retained the RFC to do other work).

Regardless, substantial evidence supports the ALJ's finding that these other conditions did not constitute severe impairments. Furthermore, except for TIAs, the ALJ considered the medical opinion evidence and purported limitations regarding each of these non-severe impairments when arriving at an RFC assessment. In her brief, Bonner has not pointed to any medical evidence discussing TIAs or the effect this condition might have on her ability to work. The Commissioner argues that the record contains no evidence to corroborate a history of TIAs. Doc. [14] at 16. The undersigned finds that there is no medical opinion evidence establishing TIAs as a severe impairment.

The ALJ considered Bonner's reports of migraines in her analysis and concluded it was not a severe condition. Doc. [8] at 19-20. The ALJ noted that Bonner has been prescribed Topamx, Botox injections, and acupuncture for treatment. Bonner reported success with Botox treatment for two years; but she later maintained headache control with auricular acupuncture twice a week. She also took medication to provide some relief from headaches. On November 10, 2020, she reported headache relief with acupuncture. At that time, her physician indicated that Bonner's condition was stable.

The ALJ also conducted a lengthy severity analysis of Bonner's DVT, cerebral venous thrombosis with subdural hematoma. Doc. [8] at 20-21. The ALJ noted that these conditions arguably caused more than minimal limitations in the past, but Bonner was not currently having problems that would limit her ability to work. The ALJ cited to medical evidence demonstrating that these conditions had stabilized. Moreover, the state agency physician, whom the ALJ relied on to formulate Bonner's RFC, considered Bonner's history of DVT, cerebral venous sinus thrombosis, and migraines in his RFC evaluation. *Id.* at 128-29, 132. As such, there is medical opinion evidence evaluating and accounting for Bonner's conditions. Bonner does not point to any evidence in the record demonstrating that these conditions caused functional limitations not already accounted for in the RFC. Bonner merely argues that, based on her extensive treatment history for these multiple impairments, it is reasonable to conclude that they support vocational/functional limitations. Doc. [13] at 8-9.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions

and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 13th day of February 2023.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE